**The EVENING STAR NEWSPAPER COMPANY, Appellant,**

v.

**Daryl A. COVINGTON and Shirley Covington, Appellees.**

**No. 7087.**

District of Columbia Court of Appeals.

Argued Oct. 9, 1973.

Decided Aug. 20, 1974.

---

Patrick J. Attridge, Washington, D.C., for appellant.

James R. Treese, Washington, D.C., for appellees.

Before KELLY, KERN and PAIR, Associate Judges.

KELLY, Associate Judge:

We review here the jury verdict in a suit for personal injuries and property damage sustained by Daryl A. Covington (plaintiff-appellee) in a collision which occurred on October 8, 1968.[1] The complaint was originally filed in the United States District Court for the District of Columbia in 1969 but three years later was certified to the Superior Court of the District of Columbia for trial. Tuesday, October 24, 1972 was ultimately set as the trial date. The Friday before trial counsel for plaintiff called defense counsel to request his consent to a continuance, the first sought in Superior Court, for the reason that plaintiff's treating physician was ill and unable to testify. Defense counsel agreed but since the following Monday was a holiday the request for continuance was necessarily made to the Civil Motions judge on Tuesday, the day of trial. The court refused to continue the case, so counsel proceeded to the Assignment Office to await a call for trial. They were later excused, around noon, subject to one-half hour's notice to return to court in the event a civil jury judge should become available to try the case.

At ten minutes to four counsel were summoned by telephone and directed to report at once for trial, not before a regularly assigned civil jury judge, but to the chambers of the Civil Motions judge who had that morning denied the request for a continuance. Upon their arrival at court settlement was discussed, to no avail. The start of trial was then deferred to the next day, Wednesday, and counsel were directed to report at 1:30 p. m., the time when the judge anticipated he would have completed his regularly assigned calendar in Motions Court. Alarmed at this circumstance, defense counsel advised the judge that his main witness, the driver of the Evening

1. Mrs. Covington joined in the suit to claim loss of consortium.

Star truck which had collided with plaintiff's car, was leaving the country on Thursday on a short, but long-planned trip. Counsel feared that the delayed start of trial would preclude the possibility that the witness would be reached to testify by Wednesday afternoon. He was told not to worry; the witness would be reached.

The case was called for trial at 2:45 p. m. the next day, at which time plaintiff's attorney renewed his motion for continuance for the reason that overnight he had persuaded another doctor to review the records and reports of plaintiff's treating physician, who could not appear, but had been unable to discuss the matter with the doctor or determine what his testimony would be.[2] Defense counsel joined in the request with some vigor, it being obvious by that time that despite the assurances of the court his principal witness would not be reached to testify that day. The court denied both motions, again assuring defense counsel that his witness would be reached that afternoon.

The jury was sworn about 3:20 p. m. After opening statements were concluded plaintiff gave testimony on the issues of liability and damages, the substance of which is for the most part irrelevant to this appeal. It is enough to say that his testimony brought to light a crucial dispute over the relationship to the accident in question of a second hospitalization to which he testified, an issue upon which medical testimony was essential.[3]

At 5:25 p. m., during a brief recess, counsel for plaintiff handed defense counsel copies of five medical reports, only one of which had previously been given the defense despite a prior stipulation that all reports would be furnished. When the court reconvened plaintiff's substitute expert witness was called to the stand and allowed to testify, over continuing objection, that he had reviewed the medical records and reports of plaintiff's examining and treating physician, a friend of many years with whom he had daily contact at the hospital, and that he could testify as to his competency as a physician and diagnostician. In the midst of this testimony, however, because of complaints from the jurors,[4] the trial was recessed at 6:00 p. m. to continue the next day, Thursday, at 11:00 a. m.

When the jury had departed defense counsel moved for a mistrial on the ground that his driver-witness could not return the next day, a fact, he stressed, that had been known to the court since before the start of the trial. The ensuing, lengthy colloquy between court and counsel, in which the witness joined,[5] culminated in the court's

---

2. It appeared that plaintiff's treating physician had had a stroke over a year before trial and in all likelihood would never be able to testify. The court was critical of the fact that counsel had just learned of this illness, intimating a lack of attention to the case in a way which caused counsel to put his resentment on record. The court insisted that the interests of justice required that a case so old should be disposed of without further delay. Counsel informed the court that he had had frequent contact with the doctor's secretary and was never informed of the doctor's illness until just before trial.

3. When counsel attempted to introduce doctor bills connected with the second hospitalization as exhibits, the court, over objection, asked plaintiff if one of the exhibits covered services connected with injuries received in the accident. Plaintiff, although clearly incompetent to do so, testified that it did. The

court reasoned that plaintiff was a competent witness to show a causal relationship between the accident and the symptoms which led to the second hospitalization six months later since the accident was the only trauma he experienced and he had no intervening problems. In an effort to be accommodating, defense counsel made no objection to the introduction of hospital and doctor bills connected with the first hospitalization; however, strenuous objection was made to bills relating to the second.

4. The court inquired of the jury members if anyone had a problem with respect to time and several replied that they would like to get home before dark, or had dependents at home waiting for them.

5. VOICE: I'm not a lawyer, not a Judge, I'm not at all familiar with the legal procedures. I've been to court a couple of times and it's taken about an hour. I have chil-

suggestion that the witness be served with a subpoena which he would be ordered to obey or risk citation for contempt. The court later acknowledged that it would have locked the witness up overnight if he had been under subpoena and it appeared that the witness would not honor it. The trial judge was adamant that the trial continue.[6]

The plaintiff's expert witness concluded his testimony the following morning, having been allowed to give his opinion of the treating physician's diagnosis and treatment. The diagnosis (cerebral concussion, cervical dorsal sprain and sprain of the left knee) was read from the record of the first hospitalization after the court ruled it admissible as a routine diagnosis about which there was little likelihood of disagreement. The provisional diagnosis in the second hospitalization (post-concussion syndrome) was likewise admitted as routine; the final diagnosis (aseptic meningitis) was not. The record revealed that this latter diagnosis, a facial weakness sometimes referred to as Bell's Palsy, could be caused by a trauma, a virus, or an infection, there being no definite cause known. The witness also testified that while he had never examined the plaintiff, two other doctors, one of whom was a neurological specialist, had seen plaintiff at least once during his admissions to the hospital and that both of these doctors were still connected with the hospital.

The defense consisted of the testimony of a witness from the Traffic Signal Maintenance Department of the D.C. Department of Highways & Traffic, the testimony of the investigating Metropolitan Police officer, and the deposition of defendant's driver. It turned out that after the court proceedings of the prior afternoon, defense counsel had taken the driver's deposition despite the fact that plaintiff's counsel, while notified, could not attend. The court at first was not disposed to allow the reading of the deposition into evidence for the stated reason that defense counsel had not filed a notice of intention to take a deposition as required by the rules of court, but eventually, upon reflection and "looking down the road", decided that the appropriate course would be to admit the deposition over plaintiff's objection.

The jury retired to deliberate at 5:40 p. m. Shortly thereafter, at their own request, the jurors were excused with the direction to reconvene at 9:00 a. m. the following day. At approximately 11:00 a. m. the next morning the jury sent word that it was unable to reach a verdict. As a consequence, the court gave the jury the American Bar Association version of the *Allen* charge,[7] over the objection of appellant, and added:

> You will again retire to deliberate your verdict in this case. You will stay in deliberation until 12:30, at which time you will be taken to lunch, if at that time you have not yet returned at a verdict. And, when you have finished lunch, you will be brought back to con-

dren that are staying with other relatives that I have to transport, prior to my catching a plane. I went through a lot of hardship to be here again this afternoon. All the time I figure it will take would be an hour or two hours, about, this is all I'm familiar with the court. I have lost money. I've got my boss mad at me because half the force is out and I have to take off this afternoon. [Tr. at 117.]

\* \* \* \* \*

VOICE: There is no way. It's not of my chosing [sic] to delay the trip. It's this or it's lost. I've explained to Your Honor that it's a trip planned by someone else a manufacturer that I've worked hard, for well over a year to earn, and it only comes once, it's not that I'll make it another week or another month, this is it. [Tr. at 118.]

6. The court suggested that the defense witness could be taken out of turn and be allowed to testify in the middle of plaintiff's case as the first witness at 11 the next morning, and by so proceeding he might possibly be able to make his 1:30 p. m. flight from the Washington National Airport.

7. Comparative Analysis of American Bar Association Standards for Criminal Justice with District of Columbia Law, Rules and Legal Practice, Trial by Jury § 5.4(a), Standard (September, 1973).

tinue your deliberations in this case. [Tr. at 219–20.]

A verdict for the plaintiff was returned at 3:00 p. m. that day.

■ We recognize at the outset the settled rule that a motion for a continuance, or one for a mistrial, is addressed to the sound discretion of the trial court and a ruling thereon will not be reversed on appeal absent a clear showing of an abuse of discretion. Etty v. Middleton, D.C.Mun. App., 62 A.2d 371 (1948); Bernard's Fur Shop v. DeWitt, D.C.Mun.App., 102 A.2d 462 (1954); 68 A.L.R.2d 470, at 489 et seq. We have thus outlined the progress of this case in such detail to demonstrate how in unusual circumstances a trial judge, acting with the best of motives, can exceed the broad limits which circumscribe the exercise of judicial discretion.

The Civil Motions judge also controls the civil calendar and is concerned daily with the difficult task of keeping that calendar current. Of paramount importance to calendar control, of course, is the refusal to countenance unwarranted delays in bringing cases to trial, particularly those which have been pending in one court or another for an inordinate length of time. It is nevertheless critical to strike a balance between the court's desire to move civil cases to trial as expeditiously as possible and the very real, and often unforeseen, difficulties which unexpectedly confront counsel preparing for trial.

In the instant case the course was set when the Civil Motions judge, in his discretion, denied plaintiff's initial request for a continuance. From the recall of the parties for trial late the same afternoon to the trial's conclusion a series of circumstances made clear that that course was set in concrete, to the ultimate and conclusive detriment to the administration of justice as well as to both parties. The result is that plaintiff-appellee, who was necessarily prejudiced by the denial of his initial motion for continuance, now finds himself in the awkward position of defending that ruling on appeal.

■ If we assume that plaintiff's counsel was originally at fault in being unprepared to proceed on the date set for trial there appears to be no abuse of discretion by the Motions judge in refusing to grant a continuance. The initial mistake, we believe, was in his later insistence that the case proceed to trial knowing of the defense's equally pressing problem with its principal witness and being unable, with any degree of certainty, to gauge the time in which he would be engaged in other matters. As a result a case which consumed about six hours of actual trial time was tried piecemeal over a period of three and one-half days. There were lengthy discussions over the crucial issue of medical testimony and the admissibility of medical records dealing with plaintiff's second hospitalization through a doctor who had never seen plaintiff rather than through one or both of the other doctors who had. The medical records were given to the jury with the final diagnosis excised and some pages removed, thus giving the jury an incomplete and erroneous picture of the facts. And finally, in a case where the issue of credibility was vital on the question of liability, the testimony of one of the drivers was needlessly required to be presented by way of deposition. This latter circumstance highlights the jury's dilemma in being unable to reach a verdict until after the court gave the *Allen* charge and directed the jury to continue its deliberations on into the afternoon.

In the unusual setting of this case, as explained above, we conclude that it was an abuse of discretion for the trial court to force the trial to conclusion over objection by both parties after it became aware of the accelerating and extreme effects of that course.

Reversed and remanded for a new trial.